IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

RECEIVED
WILLIAM T. WALSH, CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. _____ |
| | : | |
| v. | : | 18 U.S.C. § 371 |
| | : | 18 U.S.C. § 287 |
| JOHN T.C. YEH, | : | 18 U.S.C. § 1349 |
| JOSEPH YEH, | : | 18 U.S.C. § 1341 |
| ANTHONY MOWL, | : | 18 U.S.C. § 2 |
| DONALD TROPP and | : | 18 U.S.C. § 982 |
| VIABLE COMMUNICATIONS, INC., | : | |
| | : | **INDICTMENT** |
| Defendants. | : | |

09cr856

The Grand Jury, in and for the District of New Jersey, sitting

at Camden, charges:

### General Allegations

At all times relevant to this Indictment:

1.    The Americans with Disabilities Act ("ADA") required

that each common carrier providing telephone voice transmission

services provide Telecommunications Relay Services ("TRS") in the

area in which it offered services so that deaf and hard of

hearing individuals could communicate with hearing individuals

"in a manner that is functionally equivalent to . . . voice

communication services."  A nationwide TRS program began in 1993.

Video Relay Service ("VRS") was a specific type of TRS.

2.    VRS was an online video translation service that

allowed people with hearing disabilities to communicate with

hearing individuals online through the use of interpreters and

web cameras.  A person with a hearing disability could

communicate with a hearing person by contacting a VRS provider

through an audio and video internet connection.  The VRS provider, in turn, employed a Video Interpreter ("VI") to view and interpret the hearing disabled person's signed conversation and relay the signed conversation orally to a hearing person. VRS also allowed a hearing person to initiate contact with a hearing disabled person through a VI.

3.   TRS, including VRS, was funded by fees assessed by the Federal Communications Commission ("FCC") on all common carriers providing interstate telecommunications services.  The fees were generally passed on to consumers through charges included in consumers' telephone bills.  The fees were deposited in the TRS Fund.

4.   The TRS Fund was established by the FCC in 1993 as the mechanism for collecting and disbursing TRS funds.  The National Exchange Carrier Association ("NECA") was responsible for, among other things, administering the TRS Fund.

5.   VRS providers were eligible to be reimbursed from the TRS Fund for their legitimate services.  The TRS Fund reimbursed VRS providers at the rate of approximately $6.73 per minute (or approximately $403.80 per hour) for the first 50,000 minutes billed in any given month, approximately $6.46 per minute (approximately $387.60 per hour) for minutes 50,001 through 500,000, and approximately $6.26 per minute (approximately $375.60 per hour) for all minutes over 500,000.

## Defendants and Relevant Entities

6.   NECA was a non-profit association that administered the TRS Fund.  This function included collecting carriers' annual contributions, receiving claims for reimbursement from VRS providers and making payments on behalf of the FCC to VRS providers for these claims.  NECA was headquartered in Whippany, New Jersey, in Morris County.

7.   VRS providers that were authorized by the FCC to receive payment for VRS would submit their monthly claims and requests for payment along with the required backup documentation to NECA and would be paid out of the TRS Fund, a function that the FCC contracted to NECA.  NECA required that VRS providers include call detail records for each billed call, which included the date, time and call duration.  NECA additionally requested that providers submit the originating phone number or IP address and the destination number with the call detail records.  An IP address identifies the computer from which the caller is calling. Because VRS calls were made over the internet, the IP address of the caller was generally used as the identifier for record-keeping purposes.

8.   Company 1 was a certified VRS provider based in Flint, Michigan.  Company 1 provided VRS through its own call centers and also contracted with outside entities to operate VRS call centers.  The minutes from the contracted call centers were

billed by Company 1 to NECA with the payments for those calls divided between Company 1 and the contracted call center.   In 2008, Company 1 was paid more than $38.7 million for VRS services purportedly provided by Company 1 and its contracted call centers.

9.   Defendant VIABLE COMMUNICATIONS, INC. ("VIABLE") was a Delaware corporation established in 2005 and was headquartered in Rockville, Maryland.   VIABLE operated call centers, or subcontracted to others the operation of call centers in, among other places: New York, New York; Colonia, New Jersey, in Middlesex County; Miami Lakes, Florida; Kendall, Florida; Rockville, Maryland; Towson, Maryland; Baltimore, Maryland; Austin, Texas; Las Vegas, Nevada; and Phoenix, Arizona.   VIABLE was not a certified VRS provider that could bill directly to NECA.   Instead, VIABLE billed NECA through Company 1.   In 2008, VIABLE was responsible for more than half of the VRS minutes billed by Company 1.

10.   Defendant JOHN T.C. YEH ("JOHN YEH") was the founder, owner, President and Chief Executive Officer of VIABLE.

11.   Defendant JOSEPH YEH was the Vice President of Corporate Strategy for VIABLE and the brother of defendant JOHN YEH.

12.   Defendant ANTHONY MOWL began his employment at VIABLE as a business development associate and then became the Assistant

4

Vice President for Business Development.  As Assistant Vice President, MOWL reported directly to JOHN YEH and JOSEPH YEH.

13.  Defendant DONALD TROPP also began his employment at VIABLE in the business development department but was promoted to Human Resources Manager.  As Human Resource Manager, TROPP reported directly to JOHN YEH and JOSEPH YEH.

**COUNT 1**
**(Conspiracy to Defraud the United States and to Cause**
**the Submission of False Claims: 18 U.S.C. § 371)**

14.   The allegations contained in paragraphs 1 through 13 of this Indictment are repeated and realleged as if fully set forth herein.

15.   From in or about July 2006 through in or about July 2009, the exact dates being unknown to the Grand Jury, in the District of New Jersey, and elsewhere, defendants

**JOHN T.C. YEH,**
**JOSEPH YEH,**
**ANTHONY MOWL,**
**DONALD TROPP and**
**VIABLE COMMUNICATIONS, INC.**

and others known and unknown to the Grand Jury did willfully, that is with the intent of furthering the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other to defraud the United States and agencies thereof and to commit offenses against them, to wit:

(A)   to defraud the United States by impairing, impeding, obstructing, and defeating, through deceitful and dishonest means, the lawful government functions of the United States Federal Communications Commission and its agents in their administration of the Telecommunications Relay Services Fund, in violation of Title 18, United States Code, Section 371;

(B)   to defraud the United States of and concerning its right to have its officers and employees, and particularly the

personnel and agents of the Federal Communications Commission, free to transact the official business of the United States unhindered, unhampered, unobstructed and unimpaired by the exertion upon them of dishonest, corrupt, unlawful, improper and undue pressure and influence, in violation of Title 18, United States Code, Section 371; and

(C)  to commit an offense against the United States by making and presenting to any department or agency of the United States, a false, fictitious, and fraudulent claim upon or against the United States, or any department or agency thereof, in violation of Title 18, United States Code, Section 287.

### Object of the Conspiracy

16.  It was an object of the conspiracy for defendants JOHN YEH, JOSEPH YEH, MOWL, TROPP and VIABLE, and others to unlawfully enrich themselves by submitting and causing the submission of false and fraudulent claims to NECA for reimbursement for VRS calls that the defendants knew to be false and fraudulent.

### Manner and Methods of the Conspiracy

17.  The manner and methods by which defendants JOHN YEH, JOSEPH YEH, MOWL, TROPP and VIABLE, and others sought to accomplish the object of the conspiracy included, among others, the following:

18.   Defendants JOHN YEH, JOSEPH YEH and VIABLE would develop proprietary hardware that would permit deaf and hard of hearing individuals to make VRS calls and would provide VRS services to deaf and hard of hearing customers.

19.   Defendants JOHN YEH, JOSEPH YEH and VIABLE would arrange with Company 1 to bill NECA through Company 1 for VIABLE'S VRS service, with VIABLE receiving approximately $5.85 per VRS call.

20.   Defendants JOHN YEH, JOSEPH YEH and VIABLE would pay friends and acquaintances to generate VRS calls that VIABLE employees often referred to as "r calls" or "run calls."  These run calls would be made for the sole purpose of generating illegitimate VRS minutes for which NECA would be fraudulently billed.  For example, paid callers frequently called podcasts - which were prerecorded messages, like a recording of a radio program or a person reading a novel - and would routinely instruct the VIs not to actually interpret the calls.

21.   Defendants JOHN YEH, JOSEPH YEH and VIABLE would enter agreements with independently owned call centers for the purpose of generating additional bogus VRS minutes for VIABLE.  These call centers included those based in New York, New York, Miami Lakes, Florida, Las Vegas, Nevada, Desert Hills, Arizona, a suburb of Phoenix, Arizona, and Round Rock, Texas.  The subcontractor call centers would receive between approximately $2

and $3 per VRS call minute billed to NECA that was processed through the call center.

22.   Defendants JOHN YEH, JOSEPH YEH and VIABLE would encourage the owners of the subcontracted call centers to generate illegitimate VRS minutes using run calls.

23.   Defendants JOHN YEH, JOSEPH YEH and VIABLE would instruct the owners of the subcontracted call centers how to make the run calls appear legitimate when the run calls were billed to NECA.   Defendants JOHN YEH and JOSEPH YEH would, for example, explain that those who made run calls should vary the length of the calls, the telephone numbers that they dialed, and the IP address that they used to make the calls to avoid raising red flags with the FCC.

24.   Defendants JOHN YEH and JOSEPH YEH would, in or about the fall of 2007, arrange with VIABLE employees MOWL and TROPP to recruit family members and friends, including other VIABLE employees, to be paid to make illegitimate VRS calls using VIABLE VRS.

25.   Defendants JOHN YEH and JOSEPH YEH would pay defendants MOWL and TROPP $30 per hour of illegitimate VRS calls.   MOWL and TROPP would in turn pay the callers making the illegitimate calls between approximately $20 and $25 an hour.

26.   Defendants JOHN YEH and JOSEPH YEH would track the number of VRS call minutes generated by paid callers using the

callers' IP addresses or their VIABLE screen names that MOWL and TROPP would provide.

27.   Defendants JOHN YEH and JOSEPH YEH would pay defendant MOWL both from VIABLE accounts as well as from their personal accounts.  Defendants MOWL and TROPP would then distribute payments to their paid run callers by cash or check.

28.   Defendants JOHN YEH and JOSEPH YEH would instruct their co-conspirators, including defendants MOWL and TROPP, to destroy documentation of their arrangement to pay callers to use VIABLE VRS to make illegitimate VRS calls.

29.   Defendants JOHN YEH, JOSEPH YEH and VIABLE would pay defendants MOWL and TROPP at least $162,000 for the time period of in or about the fall of 2007 through in or about January 2009, for the purpose of paying callers.  The illegitimate VRS calls associated with the payments to defendants MOWL and TROPP caused approximately $2,106,000 to be billed to the TRS Fund.

30.   Defendants JOHN YEH, JOSEPH YEH, MOWL, TROPP and VIABLE would cause the submission of claims to NECA totaling approximately 8.28 million VRS call minutes for the time period of in or about July 2006 through in or about May 2009, at a total cost of approximately $55 million to the TRS Fund.  These claims included the false and fraudulent run calls that they generated and processed through VIABLE and its subcontracted call centers.

10

## Overt Acts

31.   In furtherance of the conspiracy, and to accomplish its object, at least one of the conspirators committed, or caused to be committed, in the District of New Jersey, and elsewhere, the following overt acts, among others:

32.   On or about September 20, 2006, defendant JOHN YEH signed an agreement with Company 1, in which Company 1 agreed to bill NECA for VIABLE VRS services provided by VIABLE and that VIABLE would receive approximately 90% of the NECA reimbursement.

33.   On or about September 8, 2006, defendant JOHN YEH signed a Memorandum of Understanding with a Las Vegas, Nevada based call center to provide VRS call center services for VIABLE and which provided that the call center would receive 55% of all money billed by or through VIABLE to NECA for VRS calls processed by the Las Vegas call center.

34.   On or about April 23, 2007, co-conspirator Larry Berke, a co-owner of a VIABLE call center in Arizona sent an e-mail to defendants JOHN YEH and JOSEPH YEH, stating that "[w]e will continue to have the control over the lenghty [sic] of callers and lenghty [sic] of phone calls per your request two weeks ago."

35.   On or about July 21, 2007, defendant JOHN YEH sent an e-mail to Larry Berke, stating "your calls should look good - not too perfect and too long hours.  Important not raise 'red flag' for FCC to see it.  Understand me?"

36.  On or about September 15, 2007, defendants JOHN YEH and JOSEPH YEH signed a contract with a New York, New York based call center to provide VRS call center services for VIABLE in return for $2.25 per VRS call minute processed by the call center.

37.  On or about February 29, 2008, defendant JOHN YEH signed a contract with a Round Rock, Texas based call center to provide VRS call center services for VIABLE in return for $2.00 per VRS call minute processed by the call center.

38.  On or about March 13, 2008, a VRS call of approximately 113 minute duration was made from IP address 216.142.48.50 to a podcast at (559) 380-3622, which call was submitted to NECA for reimbursement on April 10, 2008.

39.  On or about August 14, 2008, a VRS call of approximately 117 minute duration was made from IP address 216.142.48.50 to a podcast at (559) 553-4641, which call was submitted to NECA for reimbursement on September 14, 2008.

40.  On or about October 10, 2008, defendant JOSEPH YEH signed a contract with a Miami Lakes, Florida based call center to provide VRS call center services for VIABLE in return for $2.00 per VRS call minute processed by the call center.

41.  On or about November 26, 2008, defendants JOHN YEH, JOSEPH YEH, MOWL, TROPP and VIABLE caused the mailing of a package, via the United States Postal Service, to NECA in Whippany, New Jersey, in Morris County, that contained the call

12

detail records that supported Company 1's request for payment for VRS services for October 2008.  These records included call detail records for the fraudulent calls VIABLE generated and processed in October 2008.

42.  On or about January 20, 2009, defendants JOHN YEH, JOSEPH YEH, MOWL, TROPP and VIABLE caused the mailing of a package, via UPS Express, to NECA in Whippany, New Jersey, in Morris County, that contained the call detail records that supported Company 1's request for payment for VRS services for November 2008.  These records included call detail records for the fraudulent calls the defendants generated and processed in November 2008.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2-3
### (Submission of False Claims: 18 U.S.C. §§ 287 and 2)

43.   The allegations contained in paragraphs 1 through 13 and 16-42 of this Indictment are repeated and realleged as if fully set forth herein.

44.   On or about the dates enumerated below, in the District of New Jersey, and elsewhere, defendants

**JOHN T.C. YEH,**
**JOSEPH YEH and**
**VIABLE COMMUNICATIONS, INC.**

and others known and unknown to the Grand Jury, did make and present and cause the making and presenting to a person or officer in the civil, military, and naval service of the United States, and to a department or agency thereof, the following claims upon and against the United States, and a department or agency thereof, knowing such claims to be false, fictitious, and fraudulent:

14

| Count | Defendants | On or about Claim Date | Description of the Call |
|-------|------------|------------------------|------------------------|
| 2 | JOHN YEH, JOSEPH YEH and VIABLE | 4/10/2008 | Approximately 113 minute duration VRS call from IP address 216.142.48.50 to a podcast at (559) 380-3622, made on or about March 13, 2008 |
| 3 | JOHN YEH, JOSEPH YEH and VIABLE | 9/14/2008 | Approximately 117 minute duration VRS call from IP address 216.142.48.50 to a podcast at (559) 553-4641, made on or about August 14, 2008 |

In violation of Title 18, United States Code, Sections 287 and 2.

## COUNT 4
## (Conspiracy to Commit Mail Fraud: 18 U.S.C. § 1349)

45.   The allegations contained in paragraphs 1 through 13 and 16-42 of this Indictment are repeated and realleged as if fully set forth herein.

46.   From in or about July 2006 through in or about July 2009, the exact dates being unknown to the Grand Jury, in the District of New Jersey, and elsewhere, defendants

**JOHN T.C. YEH,**
**JOSEPH YEH,**
**ANTHONY MOWL,**
**DONALD TROPP and**
**VIABLE COMMUNICATIONS, INC.**

and others known and unknown to the Grand Jury did willfully, that is with the intent of furthering the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other to commit an offense against the United States, that is, to violate Title 18, United States Code, Section 1341, by placing and causing to be placed in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or depositing and causing to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or taking and receiving therefrom, any such matter or thing, or knowingly causing to be delivered by mail or such carrier according to the direction thereon, or at the place

at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing.

All in violation of Title 18, United States Code, Section 1349.

COUNTS 5-6
(Mail Fraud: 18 U.S.C. §§ 1341 and 2)

47.   The allegations contained in paragraphs 1 through 13
and 16-42 of this Indictment are repeated and realleged as if
fully set forth herein.

48.   On or about the respective dates shown below, each such
date constituting a separate count of this Indictment, within the
District of New Jersey, and elsewhere, defendants

JOHN T.C. YEH,
JOSEPH YEH,
ANTHONY MOWL,
DONALD TROPP and
VIABLE COMMUNICATIONS, INC.

and others known and unknown to the Grand Jury, for the purposes
of executing the scheme and artifice to defraud described above
and to obtain money and property by means of false and fraudulent
pretenses, representations, and promises, did knowingly: (a)
place and cause to be placed in any post office and authorized
depository for mail matter, any matter and thing whatever to be
sent and delivered by the Postal Service; (b) deposit and cause
to be deposited any matter and thing whatever to be sent and
delivered by any private and interstate commercial carrier; and
(c) cause to be delivered by mail and private and interstate
commercial carrier any matter and thing whatever according to the
direction thereon, the following:

18

| Count | Defendants | On or About Mailing Dates | Description of the Mailing |
|-------|-----------|---------------------------|----------------------------|
| 5 | JOHN YEH, JOSEPH YEH, MOWL, TROPP and VIABLE | 11/26/2008 | Package containing call detail records that supported Company 1's request for payment for VRS services for October 2008 delivered via the United States Postal Service to NECA in Whippany, New Jersey, Morris County |
| 6 | JOHN YEH, JOSEPH YEH, MOWL, TROPP and VIABLE | 1/20/2009 | Package containing call detail records that supported Company 1's request for payment for VRS services for November 2008 delivered via UPS Express to NECA in Whippany, New Jersey, Morris County |

In violation of Title 18, United States Code, Sections 1341 and 2.

## CRIMINAL FORFEITURE
### (18 U.S.C. § 982)

49.   The allegations contained in Counts 1-6 of this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, JOHN T.C. YEH, JOSEPH YEH, ANTHONY MOWL, DONALD TROPP and VIABLE COMMUNICATIONS, INC. have an interest in pursuant to the provisions of Title 18, United States Code, Section 982(a)(7).

50.   Pursuant to Title 18, United States Code, Section 982(a)(7), upon conviction of JOHN T.C. YEH, JOSEPH YEH, ANTHONY MOWL, DONALD TROPP and VIABLE COMMUNICATIONS, INC. for any of the offenses charged in this Indictment, the defendants shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense or any property real or personal which was involved in the offense or any property traceable to such property.  Such forfeiture shall include, but not be limited to a money judgment in the amount of the gross proceeds of the fraud.

51.   If the property described above as being subject to forfeiture, as a result of any act or omission of JOHN T.C. YEH, JOSEPH YEH, ANTHONY MOWL, DONALD TROPP and VIABLE COMMUNICATIONS, INC.,

(a)   cannot be located upon the exercise of due diligence;

(b)   has been transferred or sold to or deposited with a

third person;

(c)   has been placed beyond the jurisdiction of the Court;

(d)   has been substantially diminished in value; or

(e)   has been commingled with other property which cannot be

subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), as made applicable through

Title 18, United States Code, Section 928(b)(1), to seek

forfeiture of any other property of JOHN T.C. YEH, JOSEPH YEH,

ANTHONY MOWL, DONALD TROPP and VIABLE COMMUNICATIONS, INC. up to

the value of the above forfeitable property.

All pursuant to Title 18, United States Code, Section

982(a)(7) and the procedures set forth at Title 21, United States

Code, Section 853, as made applicable through Title 18, United

States Code, Section 982(b)(1).

A TRUE BILL

FOREPERSON

STEVEN A. TYRRELL
CHIEF, FRAUD SECTION

Hank Bond Walther
Assistant Chief, Fraud Section

Brigham Cannon
Trial Attorney, Fraud Section

CASE NUMBER:

# United States District Court
## District of New Jersey

### UNITED STATES OF AMERICA

v.

JOHN T.C. YEH,
JOSEPH YEH,
ANTHONY MOWL,
DONALD TROPP and
VIABLE COMMUNICATIONS, INC.

# INDICTMENT FOR

18 U.S.C. § 371
18 U.S.C. § 287
18 U.S.C. § 1349
18 U.S.C. § 1341
18 U.S.C. § 2
18 U.S.C. § 982

A True Bill

STEVEN A. TYRRELL
CHIEF, FRAUD SECTION
WASHINGTON, DISTRICT OF COLUMBIA

HANK WALTHER
ASSISTANT CHIEF, FRAUD SECTION
BRIGHAM CANNON
TRIAL ATTORNEY, FRAUD SECTION
UNITED STATES DEPARTMENT OF JUSTICE
202.307.0593